Harlan H. Hilliker and Kathryn B. Hilliker v. Commissioner.
Hilliker v. Commissioner
Docket No. 5823-68.
United States Tax Court
T.C. Memo 1972-183; 1972 Tax Ct. Memo LEXIS 74; 31 T.C.M. (CCH) 896; T.C.M. (RIA) 72183; August 22, 1972
*74 Petitioner was sole shareholder of Civic, a subchapter S corporation during Civic's fiscal years 1963, 1964, and 1965. Civic engaged hostesses (acting as private contractors) to call on new residents on behalf of Civic's sponsors; the hostesses were compensated, in part, by being granted the use, based upon superior performance, of the Newcomer, a 42-foot Chris Craft yacht. Held, such use of the Newcomer qualified as directly related to Civic's business, as required by sec. 274, I.R.C. 1954, since it constituted a prize or award, taxable to hostesses. Held further, reservation calendar and monthly newsletter, maintained by Civic, provided the substantiation required by sec. 274, I.R.C. 1954, of the identity of the hostess users and their business relationship. The Newcomer was enroute to its "home port" during the fiscal year 1963. Held, during that time the Newcomer was not being used as an entertainment facility; consequently section 274 is inapplicable. Held further, respondent failed to timely raise the argument that the Newcomer was not "placed in service" during the fiscal year 1963. During a portion of the fiscal years 1964 *75 and 1965, the Newcomer was used by employees. Held, such use is not excepted from the requirements of sec. 1.274-2(a) through (e), Income Tax Regs., since the use by employees was not on a nondiscriminatory basis as required by regulation section 1.274-2(f)(2)(v) when personal employee use is compared with use by owners, plus use which is deemed to be personal use. During the fiscal years 1964 and 1965, the boat was used for business purposes, for personal purposes, and was idle during a part of the two years. Held, in determining the disallowable portion of personal use of the facility, actual personal use plus actual use deemed to be personal is compared to the total actual use without considering periods of inactivity or nonuse. Held further, a portion of boat-related travel expense found nondeductible due to requirements of sec. 274, I.R.C. 1954. Harry A. Rider, King Cole Bldg., Indianapolis, Ind., and LeRoy A. Freiherr, for the petitioners. James J. McGrath, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined deficiencies in the Federal income tax of Harlan and Kathryn Hilliker, hereinafter petitioners, for the calendar years 1963, 1964, and 1965 in the amounts of $6,345.20, $8,555.54, and $5,900.27, respectively. The 897 total deficiency for each of the above years arises by virtue of petitioners' ownership of stock in Civic Newcomer, Incorporated (hereinafter Civic), an electing small business corporation under subchapter S, Internal Revenue Code of 1954, and adjustments by respondent to both the net income *78 of Civic for its fiscal years ended October 31, 1963, 1964, and 1965, and the allowable investment credit of Civic for the fiscal year ended October 31, 1963. Petitioners have conceded certain isues; the remaining issues are (a) whether certain boat and travel expenses are deductible under section 162 as ordinary and necessary business expenses; (b) whether petitioner has met the additional requirements of section 274 with respect to such expenses; and (c) whether a boat purchased by Civic in 1963 constitutes property eligible for the investment credit under section 38. Findings of Fact Certain facts have been stipulated; the stipulations of fact and the exhibits attached thereto are incorporated herein by reference. The petitioners, husband and wife, were residents of Bloomington, Indiana, at the time of the filing of this petition, and filed each of the joint Federal income tax returns here involved with the district director of internal revenue, Indianapolis, Indiana. Petitioners have at all times relevant herein been the shareholders of all of the common stock of Civic. At all times relevant herein, Civic has been an electing small business corporation under subchapter S of *79 the Internal Revenue Code of 1954. During the three fiscal years of Civic at issue, October 31, 1963, 1964, and 1965, Civic conducted a greeting service in which its franchised hostesses represented local businesses (hereinafter termed sponsors) when calling upon new residents in the hostesses' home communities. The franchised hostesses were compensated in part by the payment to them of 50 percent of the total amount billed by Civic to the sponsors in the hostesses' territory during each month. The hostesses operated in approximately 70 cities located in 9 states, predominantly in the middle western part of the country, and were under no restrictions as to the hours they worked or the methods they employed. The hostesses paid their own auto, telephone, and office expenses. Sponsors, generally merchants and professional people, were contacted by the hostesses requesting that they sign a "membership agreement" with Civic, paying Civic a fee for the services of the hostesses. The names of potential sponsors were acquired by Civic by gaining access to new customer lists of utilities, credit bureaus, or chambers of commerce. The actual enlistment of the sponsors was primarily the duty *80 of the hostesses. In its fiscal year ended October 31, 1963, Civic purchased a 42-foot Chris Craft "Constellation" yacht having accommodations for eight people plus the crew. The boat, named the "Newcomer," was equipped with an electric galley, electric refrigeration, and a shower. The Newcomer was purchased primarily for the purpose of offering its use to hostesses to encourage increased performance, and secondarily for use in entertaining sponsors and those utility officials or other persons providing a source of names of prospective sponsors. Acquired in Chicago, Newcomer was taken down the Mississippi and then to Fort Lauderdale, Florida, as "home port." The hostesses were made aware from the time of the acquisition of Newcomer and on a regular basis thereafter of the availability of Newcomer to those hostesses who produced the largest number of new sponsor contracts, had the lowest number of sponsor cancellations, and had the highest billings to sponsors for towns of their size. At all times relevant herein, Civic was the owner of the Newcomer. Although acquired prior to October 31, 1963, Newcomer was enroute to Fort Lauderdale during the entire time between the date of acquisition *81 and October 31, 1963, the end of Civic's fiscal year. Civic maintained a reservation calendar for the use of the Newcomer during each of the years at issue and distributed monthly newsletters to the hostesses describing the Newcomer's activities during the prior month. During Civic's fiscal years ended October 31, 1964, and 1965, the following use was made of the Newcomer: Weeks ended in
1964
1965
Boat used by
Employees
2
4
Hostesses
26
23
Petitioner
4
1
Unidentified users 6
5
38
33
Repairs
7
12
Enroute
7
Hurricane storage
7
14
19
Total
52
52
The following boat-related expenses were claimed by petitioner and remain at issue: 898 Fiscal year ended October 31
Expense
1963
1964
1965
Depreciation
$4,302.24
$7,799.44
$5,849.58
Other expense
1,013.16
6,494.42
5,470.21
Insurance
1,316.00
1,149.00
Air conditioner added
1,903.44
Captain salary
3,000.00
Travel expenses (boat-related)
538.22
935.06
698.81
Respondent has also denied the boatrelated investment credit claimed on petitioner's 1963 individual return as a result of the acquisition of the Newcomer by *82 Civic in Civic's fiscal year ended October 31, 1963. Opinion Depreciation and Investment Credit Fiscal Year Ended October 31, 1963 Respondent's reason for disallowance of depreciation as given in the notice of deficiency was limited to the allegation that the boat-related expenses and the depreciation "are not ordinary and necessary business expense" in accordance with sections 162 and 274 of the 1954 Code. No mention was made of the section 167 requirement that the property be "placed in service." Respondent argues (for the first time in his reply brief) that, since the boat was enroute to its permanent berthing place during the period from the time of purchase to the end of the fiscal year, the boat was not "placed in service" as required by section 1.167(a)-10, Income Tax Regs.
Regulation section 1.274-2(e)(3)(iii) states that: The following expenditures shall not be considered to constitute expenditures with respect to a facility used in connection with entertainment - * * * (b) * * * Expenses or items attributable to the use of a facility for *83 other than entertainment purposes * * * Since the enroute phase of the life of the boat did not constitute a use of the boat as an entertainment facility (regardless of the ultimately intended use), the boat is not to be treated as an entertainment facility for the portion of the fiscal year 1963 here in question, and consequently section 274 is inapplicable. We do not reach respondent's argument under section 167 that the Newcomer had not been placed in service during the fiscal year 1963 since that argument was neither raised in the notice of eificiency, nor the opening statement at trial, nor in the initial brief. The issue of whether an asset has been placed in service is an entirely different issue than whether petitioner has met the requisites of section 274, both in terms of relevant evidence and the relevant legal arguments. We therefore hold for petitioner with regard to the fiscal year 1963 depreciation. With respect to the investment credit taken in the fiscal year ended October 31, 1963, section 48 limits "section 38 property" to that "with respect to which depreciation * * *84 * is allowable." Respondent's only argument in this regard is to quote regulation section 1.48-1(b)(2) which states that "property does not qualify [for investment credit] to the extent that a deduction for depreciation thereon is disallowed under section 274." Consistent with our belief that each accounting period must stand on its own facts, the fact that a portion of the depreciation on the Newcomer may be disallowed for years subsequent to 1963 cannot be given retroactive effect to work a denial of investment credit in a year in which no depreciation is being disallowed because of section 274. Since none of the depreciation is disallowed under section 274 for the fiscal year ended October 31, 1963, the only argument raised by respondent fails, and we therefore hold for petitioner on this issue of investment credit. Depreciation - Fiscal Years Ended October 31, 1964, and 1965 It is respondent's position that the boat constitutes an entertainment facility within the meaning of section 274, and that no deductions with respect to the boat are allowable. In elaborating this position, respondent asserts that the use of the boat was not directly related to the active conduct *85 of the trade or business of Civic, such requirement being in section 274(a)(1)(B), and second, that the recordkeeping requirements of section 274(d) have not been met with respect to the actual use of the boat. Section 1.274-2(a), Income Tax Regs., sets forth two relationships either of which will satisfy the requirements of the statute. The first is that an expenditure with respect to entertainment must be "directly related to the active conduct of the taxpayer's trade or business" and the second is that if the expenditure followed or 899 preceded a substantial bona fide business discussion, the expenditure be "associated with the active conduct of the taxpayer's trade or business." Since there is no claim in this case by petitioner that the use of the Newcomer followed or preceded business discussions, we are concerned only with the first of the two requirements. The users of the Newcomer, as alleged by petitioner, may be divided roughly into four categories, sponsors, employees, hostesses, and petitioner himself. *86 Periods of nonuse of the Newcomer due to repair, hurricane storage, inactivity, or movement of the boat to new locations are not considered in the determination of the degree of business and nonbusiness use. Sec. 1.274-2(e)(4)(i), Income Tax Regs.
(a) Use by Sponsors Regulation section 1.274-2(c)(3)(iii) provides that: The active conduct of trade or business is considered not to be the principal character or aspect of combined business and entertainment activity on hunting or fishing trips or on yachts and other pleasure boats unless the taxpayer clearly establishes to the contrary. Although petitioner argues that the sponsors who used the boat were persons who provided Civic with its sole source of income, no further statement is made, nor was evidence adduced, as to the specific relationship between the use of the boat by a sponsor and the business he generated. Furthermore, there is no evidence (other than petitioner's general and uncorroborated testimony) that any sponsors used the boat. (The reservation *87 calendar includes some use by persons not otherwise identified, such as Million, Thoma, Spencer, McVickers, and Curry, but there is no evidence showing which of these persons were sponsors.) Consequently, we hold that the use, if any, by sponsors does not meet the directly related requirement of section 274 (a)(1)(B) nor, obviously, does it meet the proof standards of regulation section 1.274-5 since no sponsors have been identified. Since the above users have not been established to be sponsors, the tabulation of the use of the Newcomer in our findings of fact places the above users in the "Unidentified Use" category. (b) Use by Employees - Vacations Section 1.274-2(f)(2), Income Tax Regs., provides certain exceptional circumstances under which the provisions of (a) through (e) of that regulation (dealing with the direct or associated business relationship of the expenditure) do not apply. Subsection (v) of section 1.274-2(f)(2) provides that "Any expenditure by a taxpayer for a recreational, social, or similar activity (or for use of a facility in connection *88 therewith), primarily for the benefit of his employees generally" comes within this exception, with the caveat that the facility be available to employees on a basis not discriminatory in favor of officers, shareholders, or other owners, or highly compensated employees. In 1964, the Newcomer was used two weeks by employees, one week by Brown, the office manager, and one week by Allgier, the administrative assistant. In 1965, the Newcomer was used four weeks by Brown, two of which were identified in the newsletter as vacation and two of which related to the use of the boat as a floating accommodation while Brown was exploring business possibilities in southern Florida. Petitioner himself used the boat four weeks in 1964 and one week in 1965. Since the use of the boat for accommodations on a business trip is not within the category of recreational use, the relevant use by employees for purposes of regulation section 1.274-2(f)(2)(v) was two weeks in 1964 and two weeks in 1965 (compared with use by petitioner of four weeks in 1964 and one week in 1965). Respondent suggests that the term "primarily for the benefit of employees" indicates that the use by nonowner employees of a recreational *89 facility must be compared with the total use of the facility. We do not agree. Taken in the context within which the term appears, we believe that to determine whether there has been a discrimination between the two groups, nonowner use by employees must be compared with recreational use by persons in the prohibited category plus use deemed to be personal use due to petitioner's failure to meet other section 274 tests. Such discrimination occurred in 1965 since the two weeks by nonowner employees compares unfavorably with the sum of one week of actual use by petitioner and five weeks for which the user was not identified and thus deemed to be personal use. The 1964 use by employees also compares unfavorably with use by petitioner since in that year the ratio was two weeks of use by employees compared with four weeks of actual use by petitioner. [1]
*90 900 Since subsection (v) of section 1.274-2 (f)(2) has not been met, we must decide whether use of an entertainment facility by an employee was nevertheless "primarily for the furtherance of the taxpayer's trade or business, and * * * directly related to the active conduct of such trade or business," as required by regulation section 1.274-2(a)(2). Without deciding that such use may never meet that requirement, we have no evidence in this case showing the direct relationship between Brown's use of the boat on his vacation and the active conduct of Civic's business. Presumably a vacation somewhere else would have given Brown the same degree of rest and relaxation. (It is not the cost of the vacation, but rather the use of the boat which is at issue here.) With regard to the use of the boat simply as a base of operation for the exploration of the Florida market, we find applicable regulation section 1.274-2(e)(3)(iii) which states that: The following expenditures shall not be considered to constitute expenditures with respect to a facility used in connection with entertainment - * * *91 * (b) Non-Entertainment expenditures. Expenses or items attributable to the use of a facility for other than entertainment purposes such as expenses for an automobile when not used for entertainment * * * The clear implication of the above regulation is that the requirements of regulation section 1.274-2(a)(2)(i), "That the facility [the boat] was used primarily for the furtherance of the taxpayer's trade or business," and (ii) "That the expenditure was directly related to the active conduct of such trade or business" are not applicable. This is not to say, however, that there are no restrictions applicable, since the rules of Code section 162 require the travel to be ordinary and necessary, and the rules of regulation section 1.274-5(b)(2) require proof of the amount spent, the time, place, and business purpose of the business travel. The requirements of Code section 162 are met since the stated purpose of the use of the boat was the exploration of potential business locations from which the same type of business might be carried on; but, the claimed use for such purpose fails as a deductible use because of the substantiation requirements of regulation section 1.274-5. *92 The only evidence of such use is contained in the reservation calendar and the monthly newsletter sent to hostesses. (No oral testimony was offered by petitioner, who was Civic's president, as to the details of the trips nor was there a boat log put into evidence.) The reservation calendar simply gives Brown's name for the weeks in question. The newsletter, however, states for the week ended February 6, 1965, that, "The 'Big Boss' and Charley Brown spent a busy week in Southern Florida and used the boat as a base from which to operate - understand we may hear news of expansion in that area in the near future!" For the week ended August 28, 1965, the newsletter states "Charley Brown was on board for a few days - understand he was tabulating the number of new residents moving into the 'medium' size towns in the Florida area." Both of these statements are too cryptic to satisfy (in the absence of other supporting or corroborating evidence) the requirements of regulation section 1.274-5(b)(2) as to time (requires the dates of departure and return, and the number of days away from home spent on business), and place (requires a description by name of the city or other similar designation). *93 Arguably the business purpose may be inferred, but without evidence of the time or place of the transaction of business, the requirements of the statute have not been met. Consequently, the two weeks of use for Brown ostensibly for business travel must be categorized as a nonbusiness use of the Newcomer. (c) Use by Hostesses In contrast to the situation noted in note 1, supra, where hostesses dropped by while the boat was being used by employees, there was also a regular program of reserving the use of the Newcomer for hostesses, giving priority to those with the best records of new sponsor contracts, low number of cancellations by sponsors, and high billings to sponsors for towns of an equivalent size. Each of these factors was within the direct control of the hostesses, and each hostess 901 was notified at the time the Newcomer was purchased and regularly thereafter that the boat was available to those hostesses with high achievement in the three categories. It is respondent's argument that the use by the hostesses was not "directly related" to Civic's business, as required by regulation section 1.274-2 and that there is not adequate evidence of the use of the boat by *94 the hostesses as required by regulation section 1.274-5. We believe that the use of Newcomer by the hostesses was in the form of a prize or award for excelling in their role of obtaining and retaining sponsor contracts. Each monthly newsletter from the time the boat was acquired in 1963 through the end of 1965 pointed out to the hostesses that their use of the boat depended upon superior performance. Three hostesses who had used the boat on that basis gave testimony that the knowledge of the boat's availability spurred them to increased performance. Regulation section 1.274-2(c)(5) states that such an expenditure (made to a nonemployee) will be considered as directly related if it was a "prize or award which is required to be included in gross income under section 74." Respondent concedes that the hostesses were independent contractors and nonemployees; nor is there any real question in that regard even if respondent had not conceded such to be the case. With regard to the evidence of the actual use of Newcomer by hostesses (as distinguished from the business purposes of such use) respondent *95 asserts that the reservation calendar was not a record of actual use, did not contain the specific information required by section 274(d), and was not prepared at or near the time of actual use. However, respondent ignores the fact that monthly newsletters were sent to each hostess giving the details of each use of the Newcomer by a hostess. [2] Some of these newsletters have been made a part of the record. Since the boat was operated on the basis of reservations, and since respondent has stipulated that the reservation calendar in evidence is the official one maintained during the entire period in question by Civic's employees, it seems reasonable to *96 assume that the calendar was corrected for changed reservations up to the actual time of use. This fact is borne out by the fact that although some reservations were not described in the newsletter, each use described in the newsletter had an appropriate reservation. We hold that the reservation calendar coupled with the monthly newsletter which was prepared within a month of the actual use, provide the requisite record. The fact that neither bears the label "diary" or specifically served such a purpose does not afford the respondent the privilege of ignoring the information contained therein. Parenthetically, since both the reservation calendar and the monthly newsletter served business purposes completely independent of recording information for the purpose of obtaining tax deductions, they are even more credible than a record book maintained only for that purpose. Our findings of fact reflect the number of weeks of use by persons identified as hostesses in the newsletter whose names were entered in the reservation calendar for the month preceding the newsletter. In summary, the fiscal years 1964 and 1965 deductibility of depreciation for the Newcomer is dependent upon the satisfaction *97 of the requirements set forth in section 274 as to each category of use of the Newcomer. We find, for the reasons discussed above, that in the fiscal year ended October 31, 1964, there were 26 weeks of business use (the use by hostesses) and 12 weeks of personal use (the remaining weeks of use); in the fiscal year 1965 there were 23 weeks of business use (the use by hostesses) and 10 weeks of personal use (the remaining weeks of use). Ignoring for the moment the portion of the year when the boat was not actively used, i.e., the time absorbed by repairs, transportation to new locales, hurricane storage, and inactivity, the personal (and consequently the nondeductible) use of the Newcomer was 31.5 percent for the fiscal year 1964 and 30.3 percent for the fiscal year 1965. These percentages of course would increase or decrease substantially if the period of nonuse were attributed to either the personal or the business side of the equation. We think neither should be the case, since the period of nonuse was generally foreseeable and benefites the business and personal use equally. Although regulation section 1.274-2(e)(4)(i), which 902 requires in determining whether the primary *98 use of a facility was for business, that only actual use will be considered, is not directly applicable, [3] the principle is analogous. Although the asset in question retains its depreciable character during the entire taxable period, because of the use involved, only that pro rata amount of the total year's depreciation attributable to actual business use is allowable as a deduction, and the amount attributable to personal use is not deductible. The above pro-ration compares actual personal use, plus actual use deemed to be personal, to total actual use (personal plus business) and does not take into account periods of inactivity or nonuse. See International Artists, Ltd., 55 T.C. 94, 107 (1970). Other Expenses, Insurance, Captain's Salary Respondent's notice of deficiency sets forth the total boat related expenses which were being disallowed and included therein was the item "Other expenses." The amounts in this category for the three years in question are set forth in *99 our findings of fact. The notice of deficiency included only the yearly totals without detailed explanation. The stipulation of the parties is that: During all three fiscal years in question herein, Civic Newcomer, Inc., did make the disbursements, accruals, and depreciation calculations, and the existence of said items are agreed to by the parties and the sole remaining issue regarding such items is the question of deductibility for Federal Income Tax Returns. Regarding "Other expense," etc., we take this stipulation to mean that respondent concedes that these expenses were incurred as described, but are not deductible since they related to the operation of an entertainment facility, all or a portion of which was devoted to personal use. We agree with respondent's theory (which is not challenged by petitioner) that the deductibility of these expenses depends upon the amount of business use of the facility. We have held that there was no personal use of the boat in the fiscal year 1963, there was a 31.5 percent personal use of the boat in the fiscal year 1964, and a 30.3 percent personal use of the boat in the fiscal year 1965; consequently, to the extent that we have found that *100 there was personal use of the boat, the other expenses, insurance, and captain's salary are disallowed. Air Conditioner Added Respondent's notice of deficiency stated as to each of the boat expenses that the disallowance was premised upon the theory that the expenses were not ordinary and necessary under section 162, nor were the requirements of section 274 met with respect to such expenses. Although the use of the boat generally has been discussed above, and a portion thereof found to satisfy the requisites of section 274, the cost of adding an air-conditioning unit is a capital expenditure, and does not qualify under section 162 for that reason. Accordingly we hold for respondent with respect to the cost of the air conditioner. Travel Expenses The final category of expense here at issue is the amount termed "boat related travel expense" in the notice of deficiency. The parties' stipulation that Civic "did made the disbursements," quoted, supra, with respect to other expenses, is equally applicable to this category, thereby avoiding the necessity of proof on petitioner's part that *101 the amounts deducted were actually spent. The stipulation does not, however, relieve petitioner from the responsibility placed upon him by section 274 of proving the business relationship of the expenditures, the dates of departure and return from each trip, and the number of days spent on business. [4]Section 274 specifically prevents this Court from applying a Cohan- type analysis ( Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930)) and arriving at an approximation of the portion of the total we consider to be "business related." *102 In the absence of a diary or other contemporaneous record (required by regulation section 1.272-5(c)(2)), the regulations 903 provide an alternative method of substantiating a travel expenditure. In such a case regulation section 1.274-5(c)(3) provides: The taxpayer must establish such element - (i) By his own statement in writing containing specific information in detail as to such element; and (ii) By other corroborative evidence sufficient to establish such element. If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. If such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence. [Emphasis added.] Except for the travel *103 relating to the transportation of the boat down river from Chicago to Fort Lauderdale, we find neither a contemporaneous record nor any substantiation, circumstantial or otherwise, showing the travel dates, the days devoted to business, or the business purpose of the travel. [5] Petitioner's testimony, otherwise unsubstantiated, is simply not enough. Furthermore, the fact that other records may have been shown to examining agents is of no avail since no other records were presented to this Court and made a part of the record. The travel expenses related to the transport of the boat down river amounted to a total of $359.95, all a part of the fiscal year 1964 total. In addition to true travel expenses in the gross amount labeled travel, there were also included some items of boat expenses and boat equipment. The boat expenses (expendable boat shoes, jackets, etc.) should be added to the boat expense category, previously discussed, and a portion thereof deducted in accordance with the ratios previously established. (Boat expenses mislabeled as travel *104 expenses were $123.51 and $148.73 for the fiscal years 1964 and 1965, respectively.) The boat equipment, $164.19 spent in the fiscal year 1965 for boat chairs was a capital expenditure and is not deductible at all as an operating expense. The remainder of the amounts for the three fiscal years labeled "travel-boat related," does not qualify for a deduction due to lack of substantiation as discussed above. Decision will be entered under Rule 50. Footnotes
1. In both cases of the use of the boat in 1964 by employees, the reservation calendar simply gave the employee's name. For purposes of this discussion, we have assumed that such use was intended to be a vacation for the employees. However, the newsletter in both cases commented that hostesses "who were in the area * * * [dropped by and enjoyed] the boat." The record contains no further evidence of the identity of the hostesses who dropped by or the frequency or business purposes served by their visits. Consequently the two weeks of employee use in this fiscal year also fails the normal requisites of regulation section 1.274-2(a) viewed without regard to the question of vacation use exempted by regulation section 1.274-2(f)(2)(v)↩.
2. For example, the September 5, 1964, newsletter states: "Our new hostess Betty Wilson of Madison, Wisconsin and her family were on board and enjoyed the boat as well as their trip to the New York World's Fair. Betty was signed as Madison Hostess in February of this year, and since that time she has signed fourteen (14) new Sponsors to increase the billing in the amount of $280.50. That gal really wanted to stay on the boat!" The reservation calendar shows for the week ended August 8, 1964, "Mrs. Wilson in Madison, Wisconsin."↩
3. The primary purpose test has clearly been met since the proven use for business purposes was 68.5 percent and 69.7 percent, respectively for the years ended October 31, 1964, and 1965.↩
4. The requisite of regulation section 1.274-5 (b)(2)(iii) that petitioner substantiate the destination or locality of travel has been substantially met by the introduction into evidence of the revenue agent's worksheet showing the detailed breakdown of the travel disallowance, and giving for each trip the required origin and destination of each trip. The date column on the worksheet appears to be the voucher date and not the date of the trip; consequently, the worksheet does not satisfy the requirement of section 1.274-5(b)(2)(ii)↩ as to the date of departure and return, nor does the worksheet give any information as to the business purpose of the trip.
5. The trip down river with the boat and the interruptions for repairs are also evidenced by comments in the monthly newsletter.↩